## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| KIERAN EVANS, Individually and For Others Similarly Situated, | Case No. |
| | Jury Trial Demanded |
| v. | |
| | Collective Action |
| EAGLE LAND SERVICES, INC., | |

## ORIGINAL COMPLAINT

### SUMMARY

1.     Kieran Evans (Evans) brings this lawsuit to recover unpaid overtime wages and other damages from Eagle Land Services, Inc. (ELS) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.     Evans worked for ELS as a Title Abstractor from approximately December 2017 until April 2018.

3.     Evans and the other similarly situated workers who worked for ELS in the last three years regularly worked more than 40 hours a week.

4.     But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.     Instead of receiving overtime as required by the FLSA, ELS classified Evans and other similarly situated workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.     Neither Evans, nor any other similarly situated workers who worked for ELS and received a day-rate, received a guaranteed salary.

7.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     ELS conducts substantial business operations in this District and Division.

11.     Evans worked for ELS in this District and Division.

## PARTIES

12.     Evans worked for ELS as a Title Abstractor from approximately December 2017 until April 2018.

13.     Throughout his employment with ELS, Evans was classified as an independent contractor and paid a day-rate with no overtime compensation.

14.     Evans' relationship with ELS was an employer/employee relationship.

15.     Evans' written consent is attached as Exhibit A.

16.     Evans brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by ELS's day-rate system.

17.     Although these workers regularly worked more than 40 hours each week, ELS paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers, employed by, or working on behalf of, Eagle Land Services, Inc. who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

19.     The Putative Class Members are easily ascertainable from ELS's business and personnel records.

20.     ELS is a Texas corporation performing work throughout the United States and may be served by serving its registered agent for service of process, **Holly Butcher at 4508 Colleyville Blvd, Colleyville, Texas 76034,** or wherever she may be found.

## Coverage Under the FLSA

21.     At all relevant times, ELS has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, ELS has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, ELS has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). ELS has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, laptops, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, ELS has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Evans and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     ELS treated Evans and the Putative Class Members as employees and uniformly dictated the pay practices applied to Evans and the Putative Class Members.

27.     ELS's misclassification of Evans and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     ELS's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29.     ELS offers our clients a single, integrated source for all their land acquisition, right of way, and pad site construction supervision needs.[1]

30.     To provide these services, ELS hired oilfield personnel (like Evans) to work on its behalf.

31.     ELS classified many of these workers (including Evans and the Putative Class Members) as independent contractors.

32.     But ELS did not hire these workers on a project-by-project basis.

33.     Rather, ELS hired and treated these workers just like regular, even if sometimes short-term, employees.

34.     During the relevant period, these workers regularly worked for ELS in excess of 40 hours a week for weeks at a time.

35.     During the relevant period, these workers worked for ELS on a day-rate basis.

36.     During the relevant period, these workers were not paid overtime for the hours they worked for ELS in excess of 40 hours each week.

37.     These workers make up the proposed Putative Class.

38.     While exact job titles and job duties may differ, ELS subjected these workers to the same or similar illegal pay practices for similar work.

39.     For example, Evans worked for ELS as a Title Abstractor in Texas.

40.     Evans performed non-exempt work for ELS.

41.     This work included surveying land, running down titles, making payments.

42.     ELS management-level employees interviewed Evans for the position directly.

43.     ELS management-level employees hired Evans for the position directly.

---

[1] http://www.eaglelandservices.com/landservices.html (last visited May 19, 2020).

44.     Evans reported directly to ELS management-level employees, including ELS's Project manager.

45.     Throughout his employment with ELS, Evans regularly worked more than 40 hours each week without receiving overtime compensation. Instead, ELS paid Evans a day-rate for each day worked, regardless of how many hours he worked in a day or week.

46.     During his time with ELS, Evans regularly worked more than 12 hours each day, often for weeks at a time.

47.     Evans did not exercise discretion and judgment as to matters of significance.

48.     To the contrary, Evans' work was governed entirely by ELS.

49.     The Putative Class Members performed the same general job duties performed by Evans.

50.     The Putative Class Members worked the same or similar schedule worked by Evans, regularly working more than 40 hours each week. Evans' work schedule is typical of the Putative Class Members.

51.     During the relevant period, ELS classified Evans and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

52.     Evans and the Putative Class Members never received a salary.

53.     If Evans and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

54.     Evans and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

55.     Without the job performed by Evans and the Putative Class Members, ELS would not have been able to complete its business objectives.

56.     Evans and the Putative Class Members were economically dependent on ELS and relied on ELS for work and compensation.

57.     ELS determined the amount and type of compensation paid to Evans and the Putative Class Members.

58.     ELS set Evans' and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for ELS.

59.     Evans and the Putative Class Members worked in accordance with the schedule set by ELS.

60.     ELS prohibited Evans and the Putative Class Members from subcontracting out the work they are assigned by ELS.

61.     Evans and the Putative Class Members had to follow ELS's policies and procedures.

62.     Evans and the Putative Class Members had to adhere to the quality standards put in place by ELS.

63.     Evans and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, ELS provided Evans and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

64.     Evans and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the survey equipment, office space, computers, and other necessary equipment.

65.     ELS made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Evans and the Putative Class Members work.

66.     Evans and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

67.     Evans and the Putative Class Members did not market their services while employed by ELS.

68.     While employed by ELS, Evans and the Putative Class Members worked exclusively for ELS.

69.     ELS set Evans' and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for ELS.

70.     At all relevant times, ELS maintained control, oversight, and direction of Evans and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

71.     ELS controlled Evans' and the Putative Class Members' pay.

72.     Likewise, ELS controlled Evans' and the Putative Class Members' work.

73.     Evans' and the Putative Class Members' work had to adhere to the quality standards put in place by ELS.

74.     Evans and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

75.     ELS knew Evans and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

76.     ELS's records reflect the fact that Evans and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

77.     Evans and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Evans and the Putative Class Members were paid on a day-rate basis.

78.     ELS set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and ELS's policies and procedures.

79.     The work Evans and the Putative Class Members performed was an essential part of ELS's core businesses.

80.     ELS controlled Evans' and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

81.     ELS exercised control over the hours and locations Evans and the Putative Class Members worked, the tools and equipment they used, the titles they analyzed, and the rates of pay they received.

82.     Even though Evans and the Putative Class Members may have worked away from ELS's offices without the constant presence of ELS's supervisors, ELS still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

83.     Very little skill, training, or initiative was required of Evans and the Putative Class Members to perform their job duties.

84.     Indeed, the daily and weekly activities of Evans and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by ELS.

85.     Virtually every job function was predetermined by ELS, including the tools and equipment used, the titles and data to review and compile, the schedule of work, and related work duties.

86.     ELS prohibited Evans and the Putative Class Members from varying their job duties outside of predetermined parameters and required Evans and the Putative Class Members to follow its policies, procedures, and directives.

87.     Evans and the Putative Class Members performed routine job duties largely dictated by ELS.

88.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

89.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

90.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

91.     ELS uniformly denied Evans and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

92.     Evans and the Putative Class Members were not employed on a salary basis.

93.     Evans and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day or week).

94.     ELS's day-rate policy violated the FLSA because it deprived Evans and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

95.     ELS knew Evans and the Putative Class Members worked more than 40 hours in a week.

96.     ELS knew, or showed reckless disregard for whether, Evans and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

97.     ELS knew, or showed reckless disregard for whether, Evans and the Putative Class Members were not exempt from the FLSA's overtime provisions.

98.     Nonetheless, Evans and the Putative Class Members were not paid overtime.

COLLECTIVE ACTION ALLEGATIONS

99.     Evans brings this claim as a collective action under the FLSA.

100.    The Putative Class Members were victimized by ELS's pattern, practice, and/or policy which was in willful violation of the FLSA.

101.    Other Putative Class Members worked with Evans and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

102.    Based on his experiences with ELS, Evans is aware that ELS's illegal practices were imposed on the Putative Class Members.

103.    The Putative Class Members are similarly situated in all relevant respects.

104.    The Putative Class Members are blue-collar workers.

105.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

106.    The illegal day-rate policy that ELS imposed on Evans was likewise imposed on all Putative Class Members.

107.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

108.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

109.    The overtime owed to Evans and the Putative Class Members will be calculated using the same records and using the same formula.

110.    Evans' experiences are therefore typical of the experiences of the Putative Class Members.

111.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

112.    Evans has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

113.    Like each Putative Class Member, Evans has an interest in obtaining the unpaid overtime wages owed under federal law.

114.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

115.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and ELS will reap the unjust benefits of violating the FLSA.

116.    Further, even if some of the Putative Class Members could afford individual litigation against ELS, it would be unduly burdensome to the judicial system.

117.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

118.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

119.    Among the common questions of law and fact are:

    a.   Whether ELS employed the Putative Class Members within the meaning of the FLSA;

    b.   Whether ELS's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

    c.   Whether ELS's decision to classify these workers as independent contractors was made in good faith;

    d.   Whether ELS's violation of the FLSA was willful; and

    e.   Whether ELS's illegal pay practice applied to the Putative Class Members.

120.    Evans and the Putative Class Members sustained damages arising out of ELS's illegal and uniform employment policy.

121.    Evans knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

122.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ELS's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

123.    ELS is liable under the FLSA for failing to pay overtime to Evans and the Putative Class Members.

124.    Consistent with ELSs illegal day-rate policy, Evans and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

125.    As part of its regular business practices, ELS intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Evans and the Putative Class Members.

126.    ELS's illegal day-rate policy deprived Evans and the Putative Class Members of the premium overtime wages they were owed under federal law.

127.    ELS was aware, or should have been aware, that the FLSA required it to pay Evans and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

128.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

129.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

130.    Those similarly situated employees are known to ELS, are readily identifiable, and can be located through ELS's records.

**CAUSE OF ACTION**
**VIOLATION OF THE FLSA**

131.    Evans realleges and incorporates by reference all allegations in preceding paragraphs.

132.    Evans brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

133.    ELS violated, and is violating, the FLSA by failing to pay Evans and the Putative Class Members overtime.

134.    ELS misclassified Evans and Putative Class Members for purposes of the FLSA overtime requirements.

135.    Evans and the Putative Class Members were ELS's employees for purposes of the FLSA overtime requirements.

136.    ELS was Evans's and the Putative Class Members' employer under the FLSA. ELS suffered or permitted Evans and the Putative Class Members to work for or on its behalf during the relevant period.

137.    ELS cannot meet its burden to demonstrate Evans and Putative Class Members are exempt from overtime under the administrative exemption.

138.    ELS cannot meet its burden to demonstrate the Evans and Putative Class Members are exempt from overtime under the executive exemption.

139.    ELS cannot meet its burden to demonstrate Evans and Putative Class Members are exempt from overtime under the professional exemption.

140.    ELS cannot meet its burden to demonstrate Evans and Putative Class Members are exempt from overtime under the highly compensated exemption.

141.    ELS misclassified Evans and the Putative Class Members as independent contractors.

142.    ELS failed to guarantee Evans and the Putative Class Members a salary.

143.    ELS failed to pay Evans and the Putative Class Members overtime.

144.    ELS paid Evans and the Putative Class Members a day rate.

145.    ELS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Evans and the Putative Class Members overtime compensation.

146.    ELS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

147.    Accordingly, Evans and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

**JURY DEMAND**

148.    Evans demands a trial by jury.

**PRAYER**

WHEREFORE, Evans, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

      a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

      b.   A judgment against ELS awarding Evans and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

      c.   Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

      d.   An order awarding attorneys' fees, costs, and expenses;

      e.   Pre- and post-judgment interest at the highest applicable rates; and

      f.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson

**Michael A. Josephson**
Texas Bar No. 308410
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**Richard M. Schreiber**
Texas Bar No. 24056278
Federal ID No. 705430
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**